■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RAMON CABOT, Respondent. THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MIGUEL CEDENO, Respondent. — Orders, Supreme Court, Bronx County (Parness, J.), rendered on May 8, 1980, which granted the defendants' motions to suppress physical evidence, unanimously reversed, on the law, the motions to suppress denied, and the matter remanded for further proceedings. At 3:00 A.M. on April 18, 1978, Police Officer Landi and his partner, Sergeant Di Martini, while working as a robbery/burglary enforcement team, parked their unmarked vehicle near the intersection of Boynton and Watson Avenues, an area interspersed with commercial establishments in Bronx County. At this time the officers were observing the activities of two youths, one of whom, the sergeant knew, had a prior arrest for burglary. They then noticed a car, a 1967 Pontiac convertible, driven by defendant Cabot, make a right turn onto Boynton Avenue. The car was being operated without headlights, taillights or directional signals and as Sergeant Di Martini testified, the car wavered from one side of the street to the other. Defendant Cabot double parked the car adjacent to 1056 Boynton Avenue, which, the officers later discovered, was the residence of defendant Cedeno, the passenger in the vehicle. The officers watched the Pontiac for approximately two or three minutes and saw no unusual activity. However, an interior light, later described as a "courtesy light", which was hanging from the dashboard, was lit. The officers decided to investigate. They drove their vehicle and parked it behind defendants' car. Officer Landi approached the driver, and had his gun drawn but pointed downward. Both officers also testified that, as they approached the double-parked car, they feared for their safety. In any event, when Officer Landi was approximately one foot behind the driver, he knocked on the closed window, identified himself as a police officer and asked defendant Cabot for his license and registration. However, before these documents could be produced, Sergeant Di Martini, who was now standing adjacent to the seated passenger, alerted his partner that there were narcotics on the front seat between the occupants of the car. The officer observed a clear plastic bag containing a white powder, tinfoil packets and glassine envelopes. The defendants were ordered out of the vehicle, they were placed under arrest, the contraband on the front seat was seized and other drug-related items were seized from defendant Cedeno. The items, which were seized and are sought to be suppressed, included a clear plastic bag containing a white powder, which after chemical analysis was determined to be cocaine, a small green container with five tinfoil packets and 12 empty glassine envelopes. The suppression court determined that the officers lawfully "stopped" the car on the ground that they had articulable reasons to investigate. The court also found that since Officer Landi reasonably feared for his safety, he was warranted in approaching this vehicle with gun drawn, but aimed towards the ground. In sum, the court found that the approach utilized by these officers was reasonable in relation to the evolving situation. The court next concluded that Sergeant Di Martini was lawfully present at the position from which he observed the contraband. However, the court then found that, when Sergeant Di Martini viewed the items on the front seat, such did not rise to a level of probable cause to arrest. In reaching this conclusion, the suppression court rejected the argument that the cumulative effect of observing all of the objects seized furnished probable cause to believe that narcotics were present. We disagree, and find that the evidence was sufficient to establish probable cause. Both officers testified at the suppression hearing that the area was a high-crime area and a known narcotics area. The officers "stopped" the car in which the defendants were traveling when they reasonably suspected violations of the Vehicle and Traffic

Law, which violations were open and notorious. The officers were aware that the vehicle could either be one that was stolen, or that the driver was intoxicated. In any event, the senior member of the team, Sergeant Di Martini, had extensive training in narcotics identification and testified that he had previously made between 500 to 1,000 arrests for narcotics. When the sergeant looked into the automobile, an interior light was lit, and he saw on the bench-type front seat the telltale signs of narcotics trafficking — a clear plastic bag containing a white powder, tinfoil packets and glassine envelopes. The suppression court, in granting the defendants' motion to exclude this evidence relied on several cases where only one alleged sign of narcotics activity was present. In *People v Bryant* (37 NY2d 208), the court found that probable cause did not exist where the investigating officer observed 43 empty glassine envelopes on the dashboard of the car, in which defendant was seated; in *People v Oden* (36 NY2d 382), and *People v Davis* (36 NY2d 280), the only observable conduct was the passing of glassine envelopes; in *People v Nadel* (55 AD2d 659), an experienced narcotics officer observed a clear plastic bag containing a white powder protruding from defendant's pocket; in *People v Maldonado* (59 AD2d 692), the officer observed defendant passing tinfoil packets. In each case, the court determined that the evidence presented was insufficient to establish probable cause. However, since these cases were decided, new and significant maxims have been propounded by the Court of Appeals to determine whether probable cause exists when dealing with narcotics. In *People v McRay* (51 NY2d 594, 598), Chief Judge Cooke, writing for the court, stated that in "[t]he present day culture, such evidence [the passing of glassine envelopes] presents such a strong clue of criminality that little more by way of relevant facts or circumstances is required in supplementation to justify the arrest." The court proceeded to label the passing of these envelopes as the "hallmark" of an illicit drug exchange. In addition to the passing of these envelopes, the court listed other factors to consider, such as the reputation of the area and the experience level of the observer. Under the facts now before us, although we do not have present that "hallmark" (the passing of glassine envelopes), we do have an experienced officer operating in a known narcotics location openly observing what he reasonably believed to be drugs. The officers had an articulable reason for "stopping" this vehicle, they were lawfully positioned and they observed narcotics which were in plain view (*People v Brosnan,* 32 NY2d 254). Earlier this year, in a somewhat different context, the Court of Appeals upheld the warrantless search of a closed container which was visible in the back seat of an automobile. In *People v Belton* (55 NY2d 49), Chief Judge Cooke enumerated the factors which provided the police with the authority to conduct said search. A New York State trooper stopped a speeding car on the Thruway and when he began questioning the driver, the officer smelled marihuana and saw, on the floor of the car, an envelope of a type frequently used in sales of that substance. The officer ordered the four occupants out of the car, retrieved the envelope, saw that it contained traces of marihuana and arrested the four for possession of marihuana. The officer then searched five jackets that he found in the back seat and in one of them, Belton's, he found cocaine. All were arrested for possession of this substance. The court, in both *McRay* and *Belton,* did not view each element of these situations in isolation, but rather saw the realities of everyday life unfolding before a trained officer who has to confront, on a daily basis, similar incidents. To say that the former method is preferred is error, as evidenced by these latest determinations. In the appeal before this court, the effect of viewing the several items reasonably associated with trafficking in narcotics, by a trained police officer, in the early morning hours of April 18,

1978, in a known drug area, leads to the conclusion that these officers possessed probable cause to arrest. Having reached this conclusion, we do not find it necessary to pass upon defendant Cedeno's standing, or lack thereof, to challenge the seizure of the contraband. Concur — Kupferman, J. P., Sullivan, Ross, Fein and Milonas, JJ.