THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v
EUGENE ELDRIDGE, Respondent.

First Department, October 16, 1984

APPEARANCES OF COUNSEL

*Paula P. Smith* of counsel (*William E. Hellerstein,* attorney), for respondent.

*Vija Kemanis* of counsel (*Donald J. Siewert* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for appellant.

OPINION OF THE COURT

SULLIVAN, J.

The People appeal from an order, entered after an evidentiary hearing, suppressing narcotics which defendant is charged with possessing.

At about 1:40 P.M. on December 23, 1983, Housing Authority Police Officers Kipp and Gray, each of whom had participated in about 50 to 60 narcotics arrests, a significant number of which involved drugs packaged in glassine envelopes, were on patrol in a marked radio car with a third officer, driving west on 141st Street between 7th and 8th Avenues. As they approached the entrance to a parking lot on 141st Street, Officer Kipp, the driver, observed

defendant in the lot in conversation with another man, who had his hands in his pockets. The three officers knew the parking lot and surrounding abandoned buildings to be a "hotbed" of drug activity. In fact, Officer Gray had personally made five or six narcotics arrests in the parking lot. As Officer Kipp turned into the lot, he and Officer Gray noticed, from a distance of no more than 10 to 15 feet, that defendant was holding a stack of small white glassine envelopes in his open left hand at waist level. It appeared to Officer Kipp that defendant was about to give some of the glassine envelopes to the other man. Based on his experience and knowledge, Officer Kipp believed that the glassine envelopes contained narcotics.

As the officers drove closer, defendant's companion walked away. At the same time, defendant closed his hand and started to walk toward the rear of the radio car on the driver's side. Before he reached the back, however, Officer Kipp stopped the car, stepped out, grabbed defendant's left hand and said, "Stand still; open up your hand." When defendant opened his hand, Officer Kipp removed 14, one by one and one-half-inch glassine envelopes containing a white substance. Defendant was handcuffed and placed in the back of the radio car. In all, not more than two or three seconds had elapsed between the time the officers first observed defendant and his arrest. Ten larger glassine envelopes also containing a white substance were found in defendant's jacket pocket in a subsequent search at the station house. Analysis of the contents revealed the presence of cocaine in the 10 larger glassine envelopes while the 14 envelopes initially seized contained heroin.

Although it found credible the testimony of the three police officers, the hearing's only witnesses, the court determined that they lacked probable cause to arrest defendant. Relying on *People v McRay* (51 NY2d 594) and its progeny, and stressing the fact that "there was no exchange of glassines[,] [n]o exchange of money and furtive or evasive behavior" the court held that the "mere possession of glassines in a known narcotics location" does not give rise to probable cause. Accordingly, it suppressed the 24 glassine envelopes containing contraband taken from defendant. Since we believe that the record amply supports

a finding that the officers had probable cause to arrest defendant for criminal possession of a controlled substance, we reverse.

The hearing court based its conclusion that the officers lacked probable cause in part on the fact that they did not observe a completed exchange of glassine envelopes for money. Such a showing, however, is not a *sine qua non* to a finding of probable cause. Officers Kipp and Gray, who had collectively participated in over 100 drug arrests, saw defendant, in a parking lot notorious for narcotics trafficking, holding a stack of glassine envelopes containing a white substance. Based on his experience, which certainly qualified him to recognize the familiar and distinctive package by which narcotics are vended in street transactions, Officer Kipp immediately concluded that the envelopes contained narcotics. When the officers saw defendant about to hand several of the envelopes to the man with whom he was conversing, the officers could reach only one reasonable conclusion — that an illicit narcotics transaction was in progress.

Furthermore, on this record, defendant's possession of a stack of glassine envelopes in an area known for narcotics trafficking cannot be viewed in isolation. His response to the officers' appearance in the parking lot in a marked police vehicle only served to confirm their belief that the glassine envelopes contained drugs. As soon as they approached, defendant closed his left hand and began to walk to the rear of the radio car. The only logical inference to be drawn is that he was attempting to conceal the glassine envelopes and foreclose any inquiry by the officers. Had defendant completed the exchange without interruption, the officers clearly would have had probable cause to arrest him. (See *People v McRay,* 51 NY2d 594, *supra; People v Crowley,* 98 AD2d 628; *People v Alston,* 84 AD2d 737.) Even though he was unable to do so, due to the timely police intervention, the officers, given their reasonable belief that defendant illegally possessed narcotics, had probable cause to arrest him.

In *People v Cabot* (88 AD2d 556), officers trained and experienced in narcotics detection, after observing the defendant commit several traffic infractions, approached

defendant's double-parked car in an area known for narcotics activity, and, as one officer asked him for his license and registration, another looked into the car from the passenger side and saw several empty glassine envelopes, tinfoil packets, and a plastic bag containing a white powder. This court noted that while the officer had not observed an exchange of glassine envelopes, the "hallmark" of an illicit drug exchange (citing *People v McRay,* 51 NY2d 594, *supra*), probable cause existed nonetheless, since "we do have an experienced officer operating in a known narcotics location openly observing what he reasonably believed to be drugs." (88 AD2d, at p 557; see, also, *United States v Rosario,* 638 F2d 460, cert den 450 US 1000 [DEA agent observed the defendant enter building, return to parked car, and show plastic bag containing white substance to two men in car]; *United States v Baltazar,* 477 F Supp 236 [police detective observed the defendant put clear plastic bag with white powder in his coat pocket].)

Here, the officers observed conduct even more rife with the indicia of criminality than in *Cabot* (*supra*). In addition to possessing a stack of glassine envelopes — the " 'telltale sign of heroin' " (*People v Alexander,* 37 NY2d 202, 203; *People v Corrado,* 22 NY2d 308, 313) — in an area known for narcotics trafficking, defendant was showing his wares to a prospective purchaser and about to consummate a sale. And, as already noted, the behavior of defendant and his prospective customer in aborting their transaction and parting as soon as the officers arrived, with defendant concealing the glassine envelopes as he walked away, evinced a consciousness of guilt which may be considered on the issue of probable cause. (See, e.g., *People v Alexander,* 37 NY2d, at p 204; *People v Butterly,* 25 NY2d 159, 162-163.) The officers' conclusion that defendant possessed narcotics is not made any less reasonable because he did not also possess, as in *Cabot,* other items of narcotics paraphernalia, such as tinfoil packets. Contrary to the hearing court's finding, defendant's conduct was both furtive and evasive.

Finally, the hearing court's conclusion that *McRay* (*supra*) does not support a finding of probable cause in the circumstances presented here is unfounded. Since each of

the three cases consolidated in *McRay* involved the passing of glassine envelopes, the court's decision necessarily set forth guidelines for determining probable cause in the context of an exchange. But in each case the issue was whether the police officers reasonably believed that the glassine envelopes more probably contained illicit narcotics than some innocuous substance. (51 NY2d, at pp 603-604.) The existence of probable cause in a narcotics possession arrest cannot be made to turn on an observation of the passing of glassine envelopes or money since none of the possession crimes requires such conduct as an element of the offense.

Accordingly, the order of the Supreme Court, New York County (Wingate, J.), rendered April 19, 1984, granting defendant's motion to suppress physical evidence, should be reversed, on the law and the facts, the motion denied and the matter remanded to the Supreme Court for further proceedings.

KUPFERMAN, J. P., ROSS, BLOOM and ALEXANDER, JJ., concur.

Order, Supreme Court, New York County, entered on April 19, 1984, unanimously reversed, on the law and the facts, the motion denied and the matter remanded to the Supreme Court for further proceedings.