■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v CECIL GREENRIDGE, Respondent.—Orders, Supreme Court, Bronx County (Robert G. Seewald, J.), entered April 2, 1986 and on or about November 24, 1986, which granted defendant's motion to suppress physical evidence recovered from defendant's car and dismissed the indictment, are reversed on the law and the facts, the motion to suppress is denied, the indictment reinstated and the matter remanded for trial.

Defendant was indicted for criminal possession of a weapon in the third degree (Penal Law § 265.02) and criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03). In November 1985 defendant filed an omnibus motion seeking suppression of six glassine envelopes of heroin and a loaded .38 caliber revolver recovered from his car at the time of his arrest. Following a *Mapp* hearing, the trial court suppressed the evidence and later dismissed the indictment.

Briefly, the facts leading to this prosecution are as follows: On September 24, 1985, at approximately 8:30 P.M., Police Officers Connolly, Sweeny, Welsh and Flynn were in plain clothes, on anticrime patrol in The Bronx. In the vicinity of 162nd Street and Prospect Avenue, the unmarked (police) car parked about 20 feet behind a 1983 Toyota Supra. Officer Connolly exited. Connolly testified that as he passed the Toyota, walking along the sidewalk, he looked inside and observed a "glassine deck of controlled substance" on top of the console between the front seats. He then signaled the

other officers. Defendant and a codefendant, now deceased, were taken out of the car. Connolly discovered a brown vinyl bag, later found to contain five more glassine envelopes and a gun, on the car floor. Connolly testified that the glassine envelopes and bag were in plain view. Defendant was arrested. Connolly's testimony was generally consistent with that of Officer Welsh, who also testified at the *Mapp* hearing. In an oral decision, the trial court, though crediting the officers' testimony, suppressed the evidence, holding that the mere sighting of the glassine envelope, without other behavior, was insufficient to show probable cause for the subsequent search and seizure. All of the six seized glassine envelopes, as well as the gun, were suppressed.

The trial court erred in suppressing the evidence. The police had probable cause to search and seize physical evidence when an experienced officer observed a glassine envelope in plain view within a car, in an area known for drug trafficking *(see, People v McRay,* 51 NY2d 594 [1980]; *People v Eldridge,* 103 AD2d 470 [1st Dept 1984]). In *People v McRay (supra,* at 605), the Court of Appeals held that as a matter of law the inference of probable cause arises when "a trained and experienced officer observes the delivery of one or more glassine envelopes —the 'hallmark' of a drug transaction—in an area notorious for narcotics activity." The three cases consolidated in *People v McRay* involved the passing of glassine envelopes, and the court therein set guidelines for determining probable cause in that context. The argument that the observation of an exchange of glassine envelopes is a requisite factor in determining whether probable cause exists was rejected by this court in *People v Eldridge (supra).* There, this court noted that the issue is really whether the police officers reasonably believed that the glassine envelopes contained illicit narcotics rather than an innocuous substance. "The existence of probable cause in a narcotics possession arrest cannot be made to turn on an observation of the passing of glassine envelopes or money since none of the possession crimes requires such conduct as an element of the offense." *(People v Eldridge, supra,* at 474.)

In *Eldridge (supra),* this court determined that probable cause existed where two experienced police officers saw defendant, in a parking lot notorious for narcotics trafficking, holding a stack of glassine envelopes containing a white substance and appearing to be about to pass the envelopes to another man. In addition, as soon as the officers approached the defendant, he closed his hand and began to walk to the

rear of the radio car, giving rise to the inference that defendant was attempting to conceal the envelopes and foreclose any inquiry by the officers.

Further, other cases indicate that police viewing of a glassine envelope on a car floor constitutes probable cause *(People v Cox,* 28 NY2d 752 [1971]; *People v Rowell,* 27 NY2d 691 [1970]).

In the case at bar, Officer Connolly was sufficiently experienced to evaluate whether or not the glassine envelope he observed was likely to contain an illegal drug. Connolly had been a police officer four years, had made approximately 100 arrests and had been on plain-clothes duty patrolling "drug-prone locations" for six months at the time of the arrest. As testified to at the hearing, the area where the arrest took place was a "drug-prone location". There he observed a "hallmark" of a drug transaction *(People v McRay, supra),* a "glassine deck of controlled substance" on the console of a stopped car. Under these circumstances, the officer had probable cause to search the car and arrest the defendant *(United States v Ross,* 456 US 798 [1982]; *People v Ellis,* 62 NY2d 393 [1984]; *People v Langen,* 60 NY2d 170 [1983], *cert denied* 465 US 1028 [1983]). Concur—Kupferman, J. P., Sullivan, Carro, Milonas and Smith, JJ., concur.