■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JERRY KETTELES, Also Known as JERRY KETTRLES, Appellant. [879 NYS2d 208]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Sullivan, J.), rendered September 13, 2006, convicting him of burglary in the second degree and petit larceny, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Dowling, J.), of

those branches of the defendant's omnibus motion which were to suppress physical evidence and identification testimony. Justice Fisher has been substituted for former Associate Justice McCarthy (*see* 22 NYCRR 670.1 [c]).

Ordered that the judgment is affirmed.

At a pretrial suppression hearing, Police Officer Elvis Vazquez testified that, while on patrol with his partner in an unmarked police car, he observed the defendant standing on the other side of the street, holding in his hand a glass pipe which the officer recognized as the type of pipe commonly used for smoking crack cocaine. The defendant then placed the pipe in his pants pocket. The officers approached the defendant, and Vazquez's partner reached into the defendant's pocket and retrieved the pipe. The officers placed the defendant under arrest, and a search of the defendant incident to the arrest yielded a screwdriver, a utility tool kit, two flashlights, a pocketknife, a key ring holding between 30 and 40 keys, and a wallet containing, among other things, a MetroCard issued by the New York City Transit Authority. Vazquez turned the evidence over to Detective William Van Pelt, who, upon investigation, discovered that the MetroCard recovered from the defendant had been purchased with a debit card belonging to the victim of a recent burglary. The burglary victim viewed a lineup, and identified the defendant as the person who had burglarized her home. After a jury trial, the defendant was convicted of burglary in the second degree and petit larceny.

The Supreme Court properly denied those branches of the defendant's omnibus motion which were to suppress physical evidence and identification testimony as the fruits of an illegal search and seizure. The defendant does not challenge Vazquez's characterization of the object he saw the defendant holding as a crack pipe, or Vazquez's testimony that he had previously seen pipes of that type and was aware that they are used for smoking crack cocaine, and we perceive no reason to disturb the Supreme Court's determination to credit Vazquez's testimony. A crack pipe is a telltale sign of narcotics possession (*see People v Edwards,* 160 AD2d 501 [1990]; *cf. People v Alexander,* 37 NY2d 202 [1975]; *People v Goggans,* 155 AD2d 689 [1989]). The defendant's possession of a such a pipe in plain view in a public place gave the arresting officers reason to believe that the defendant unlawfully possessed a controlled substance, consisting of, at least, crack cocaine residue (*see People v Edwards,* 160 AD2d at 501). The officers, therefore, had probable cause to arrest and search the defendant (*see People v Manigault,* 247 AD2d 255 [1998]; *People v Goggans,* 155 AD2d at 690-691). We fur-

ther note that Vazquez testified that, several months earlier, he had arrested the defendant at the same location for possessing cocaine residue.

As noted by our dissenting colleague, the Court of Appeals has recognized that, although a glassine envelope is a "telltale sign of heroin" since it is a container in which heroin is frequently sold (*People v McRay,* 51 NY2d 594, 601 [1980]), a person's mere passing of such an envelope, without more, does not establish probable cause to believe that the person has engaged in a sale of narcotics, because—although it is rarely the case in the context of on-the-street exchanges—such an envelope also has legitimate uses (*see People v McRay,* 51 NY2d at 601-604; *People v Oden,* 36 NY2d 382, 385 [1975]; *People v Corrado,* 22 NY2d 308, 313 [1968]). In this case, however, the defendant was seen holding a pipe used for smoking crack cocaine, not a potentially innocuous object like an envelope. Moreover, the arresting officers needed only probable cause to believe that the defendant was in possession of narcotics, not that he had engaged in a sale of narcotics (*see People v Eldridge,* 103 AD2d 470, 474 [1984]). While a crack pipe is not a container in which narcotics are sold, and its possession is not itself a criminal offense, such a pipe is a device for ingesting narcotics, inside which the officers could reasonably expect to find at least traces of a controlled substance. It is undisputed that Vazquez recognized the object possessed by the defendant as a crack pipe, which distinguishes this case from *People v Richie* (77 AD2d 667 [1980]), where it was not immediately apparent to the arresting officers that the silver metal pipe in the defendant's automobile was evidence of his possession of marijuana.

Contrary to the defendant's contention, the police officers' failure to voucher the MetroCard recovered from his wallet did not prevent the People from establishing that the MetroCard purchased with the complainant's debit card and the MetroCard recovered from the defendant were one and the same. The circumstances presented in this case—where Vazquez seized the wallet from the defendant and maintained possession of it, without removing the MetroCard, until he turned it over to Van Pelt, and Van Pelt recorded the serial number of the MetroCard and placed the card in the case folder relating to the defendant's case—provide " 'reasonable assurances of the identity and unchanged condition' of the evidence" (*People v Julian,* 41 NY2d 340, 343 [1977], quoting *Amaro v City of New York,* 40 NY2d 30, 35 [1976]). Thus, any deficiencies in the chain of custody did not render the MetroCard and the related evidence inadmissible (*see People v Julian,* 41 NY2d at 344).

The defendant's contention that the Supreme Court erred in permitting the People to elicit hearsay testimony from Van Pelt and the complainant is unpreserved for appellate review, since the defendant's only two objections to the complained-of testimony were sustained by the court, and the defendant did not thereafter request any curative instructions or a mistrial (*see People v Heide,* 84 NY2d 943 [1994]; *People v Merchant,* 150 AD2d 730, 731 [1989]). Similarly, the defendant failed to preserve for appellate review his contention that the court erroneously permitted Van Pelt to testify that the defendant's possession of a card containing the *Miranda* warnings (*see Miranda v Arizona,* 384 US 436 [1966]) was typical of a person who had been arrested in the past, since the court subsequently delivered a curative instruction and struck the testimony at issue from the record, and the defendant did not object to the adequacy or timing of the court's corrective action (*see People v Everson,* 100 NY2d 609 [2003]; *People v Heide,* 84 NY2d at 944; *People v Williams,* 46 NY2d 1070 [1979]). Nor did the defendant preserve for appellate review his contention that the People elicited testimony suggesting that he had a propensity to commit burglaries, since he voiced no objection to the challenged testimony. The defendant's further contention that the prosecutor improperly elicited testimony about the contents of certain documents which the court had precluded from evidence is also unpreserved for appellate review and, in any event, is without merit.

The defendant was not deprived of his right to the effective assistance of counsel (*see Strickland v Washington,* 466 US 668 [1984]; *People v Baldi,* 54 NY2d 137, 147 [1981]).

The defendant's remaining contention is without merit. Prudenti, P.J., Spolzino, and Fisher, JJ., concur.

Leventhal, J. (dissenting and voting to reverse the judgment, grant those branches of the defendant's omnibus motion which were to suppress physical evidence and identification testimony, and remit the matter to the Supreme Court, Kings County, for an independent source hearing). I respectfully dissent. The physical evidence seized from the defendant and the lineup identification should have been suppressed under the undisputed facts, as set forth below, as a matter of law.

The issue presented is whether a police officer's mere observation of the defendant first holding and then putting a pipe, characterized as a crack pipe, in his pocket was sufficient to establish probable cause for the officer to search the defendant.

The facts of the search are as follows: Police Officer Elvis Vazquez, a member of the New York City Police Department's

71st Precinct Burglary Apprehension Unit, was on patrol in an unmarked car with his partner Police Officer McCarthy early in the morning of October 7, 2005. At approximately 2:40 A.M. Vazquez observed the defendant across the street from the unmarked patrol car in front of 681 Flatbush Avenue in Brooklyn, holding a glass pipe in his right hand. Vazquez could not see whether there was residue in the pipe from his vantage point across the street. Vazquez did not see the defendant receiving the clear crystal pipe from, or giving it to, another person. He concluded that there "appeared to be" crack in the pipe by the way the pipe was being held or "clutched." Vazquez did not know whether the defendant saw him and his partner in the unmarked patrol car. When the car lights flashed on the defendant, he put the pipe into his right pants pocket and started walking. It is unclear from the record whether the defendant began to walk in the same direction that the officers were traveling. However, this is of no moment as there is no evidence of furtive behavior since Vazquez testified, "I don't know if he [the defendant] saw us or not." The officers made a u-turn and pulled up in front of the defendant. Vazquez asked the defendant what he was doing, and the defendant replied, "I am just chilling with my boy." Vazquez got out of the unmarked patrol car and directed the defendant to place his hands on top of a nearby car. McCarthy reached into the defendant's right pants pocket and pulled out a 3½-to-4-inch clear crystal pipe with crack residue in the bottom. The defendant was arrested, and a search incident to the arrest was conducted, revealing the other items sought to be suppressed.

In *People v McRay* (51 NY2d 594 [1980]), the Court of Appeals articulated the minimum standard of proof necessary to establish probable cause when a police officer views a "telltale sign" of a drug transaction, such as the passing of a glassine envelope. The Court held that, in addition to a "telltale sign" like a "glassine envelope," there are other factors that should be considered in determining whether probable cause exists, such as the "high incidence of narcotic trafficking in a particular community" (*id.* at 601), the "police officer's experience and training in narcotics investigations" (*id.* at 601), and, if money is transferred, the defendant's furtive or evasive behavior, and any "additional relevant behavior or circumstances" (*id.* at 602, 604 [internal quotation marks omitted]).

The Court of Appeals, in *People v Jones* (90 NY2d 835, 837 [1997] [citation omitted]), later clarified its holding in *McRay,* stating "[a]lthough we recognized in *McRay* that the passing of a 'telltale sign' of narcotics strongly suggests an illicit drug

transaction, we do not find a 'telltale sign' to be an indispensable prerequisite to probable cause." In *Jones* (*id.*), the detective "was unable to identify the object given to the woman, but he observed other indicia of a drug transaction," such as the handling of the object in a manner typical of a drug sale or making use of a "stash." Furthermore, the transaction "took place in a drug-prone location and was observed by an experienced officer who was trained in the investigation and detection of narcotics" (*id.*). Additionally, although the officer in *Jones* only observed a "single transaction," there was other evidence in the record to "support the finding of probable cause" (*id.*).

This Court has also held that "[t]o establish probable cause to arrest the defendant . . . for a narcotics violation there had to exist indicia that a drug transaction was taking place, other than the fact that the exchange took place in a drug-prone area and was observed by an experienced officer" (*People v Mills*, 145 AD2d 578, 578 [1988]). It was the "totality of circumstances," including the officer's experience, the fact that the defendant's conduct occurred in a drug-prone area, the time of day, the number of hand-to-hand transactions that were observed (*see People v Owens*, 155 AD2d 696 [1989]), the buyer's disposal of a bag, and his attempt to run from police (*see People v Powell*, 32 AD3d 544, 545 [2006]) that led to a determination of probable cause.

The four cases cited by the majority, and the facts underlying those cases, are at variance with the facts under review here. In fact, those cases support a finding of suppression. Each contains an additional factor other than the observation that the defendant merely possessed an object that may be used to hold or to possess an illicit substance. In *People v Alexander* (37 NY2d 202 [1975]), the Court of Appeals affirmed the denial of suppression of physical evidence. In addition to the police officer's observation of a quantity of glassine envelopes, which the arresting officer, who was trained and experienced in narcotics police work, described as a telltale sign of heroin, the Court relied heavily on the defendant's dropping or throwing of the envelopes prior to the stop and search, by which the defendant thereby evinced a consciousness of guilt upon seeing the approaching officer (*id.* at 203-204).

In *People v Edwards* (160 AD2d 501 [1990]), the defendant's vehicle was pulled over since he was driving with expired inspection and registration stickers. The defendant was unable to produce the paperwork for the vehicle. The police officer asked the defendant to exit the car. While the defendant was exiting, the officer observed a paper bag containing a glass tube. When he

examined the tube more closely, he noticed the bag also contained another clear zip-lock bag containing a white powdery substance, which the officer believed to be cocaine. The defendant was arrested for possession of a controlled substance. During the search incident to the arrest, a gun and live rounds of ammunition were recovered. The Appellate Division, First Department, held that there was probable cause for the arrest, as the arresting officer had experience making drug arrests and was familiar with drug paraphernalia, including crack pipes; the area in which the arrest was effected was a drug-prone location; and, under those circumstances, the observation of a glass pipe provided probable cause to believe that the pipe contained crack residue (*id.* at 502).

In *People v Goggans* (155 AD2d 689 [1989]), the police officer observed the defendant, who was eight feet away, reach into a brown paper bag and remove a clear plastic vial containing a white powdery substance, which appeared to be crack cocaine. After displaying the contents of the bag to a passing motorist and "after observing the approach of the officer, the defendant placed the vial back into the paper bag, and began to walk away, concealing the bag underneath his coat" (*id.* at 690). The officer, after ordering the defendant to stop, reached into the defendant's coat and found 11 vials, which appeared to contain crack cocaine. This Court held that probable cause existed to believe that the white powdery substance contained in the clear plastic vial offered by the defendant to a passing motorist was crack, based on the officer's previous experience, his possession of expert knowledge of the customs of drug dealers, and the usual appearance and packaging of drugs (*id.*).

The majority also cites *People v Manigault* (247 AD2d 255 [1998]), to support its probable cause finding. Although the opinion of the Appellate Division, First Department, in that case does not recite the underlying facts, an examination of the parties' appellate briefs reveals that the detective observed "the defendant holding a plastic bag containing an inch-and-a-half long yellow capped vial filled with a white powder in his slightly cupped right hand." The Appellate Division, First Department, thus upheld the hearing's court finding of probable cause to arrest and then search the defendant.

It can be readily discerned that, in the absence of an additional factor other than the observation of mere possession of an object suspected of being associated with drug possession, probable cause would not lie. Here, the totality of the circumstances fails, as a matter of law, to establish probable cause to search the defendant. In *People v De Bour* (40 NY2d 210, 223

[1976]) and *People v Hollman* (79 NY2d 181, 184 [1992]), the Court of Appeals set out a four-tiered method for evaluating the propriety of encounters initiated by police officers in their criminal law enforcement capacity. Pursuant to these cases, Vazquez had, at best, the right to stop and inquire (level two) as he may have had a founded suspicion that criminality was afoot or perhaps reasonable suspicion (level three). However, the evidence presented is insufficient to establish that Vazquez had probable cause (level four) to believe that the defendant had committed a crime and, therefore, to search him.

The sole fact that Vazquez relied upon to establish probable cause to search the defendant was that, while driving at night, he saw the defendant from across the street with what the officer characterized as a crack pipe, and that the defendant put it in his pocket. Vazquez describes the pipe as a "crack pipe," without providing the basis for his knowledge or experience. The holdings in *McRay* and *Jones* require something more to establish probable cause than the mere observation of the defendant clutching a pipe and putting it in his pocket. The mere possession of a glass pipe that may be used to smoke crack is not a crime unless it contains an illicit substance (*see* Penal Law art 220; *see also* Penal Law § 220.50). For example, although a glassine envelope is a "telltale sign of heroin," the Court of Appeals has never held that the mere passing of a glassine envelope, standing alone, establishes probable cause (*see People v Oden,* 36 NY2d 382, 385 [1975]; *People v Corrado,* 22 NY2d 308, 313 [1968]). Rather, "additional relevant behavior or circumstances [are necessary] to raise the inference from suspicion to probable cause" (*People v Oden,* 36 NY2d at 385; *see also People v McRay,* 51 NY2d at 601-602). It follows, then, that the mere possession of a glassine envelope or a pipe which can be used to smoke an illegal substance does not amount to probable cause to believe that the holder of the envelope or pipe is in possession of an illicit substance.

Contrary to the holding of the majority, this Court has long held that even when a "pipe is in plain view, it cannot be said that it was immediately apparent that the pipe was either evidence or contraband," and that items seized as a result of a search based on this mere observation must be suppressed (*People v Richie,* 77 AD2d 667, 668 [1980]). This is so even when an officer testifies at the suppression hearing that he or she recognized a metal silver pipe as one commonly used to smoke, and thus contain, marijuana (*id.*). There is nothing to distinguish the matter sub judice from the facts in *Richie*. Additional factors beyond mere possession of the pipe must be present (*see People v Alexander,* 218 AD2d 284 [1996]).

The record is devoid of any indicia of possession of an illicit substance by the defendant. "The existence of probable cause in a narcotics possession arrest cannot be made to turn on an observation of the passing of [material] or money since none of the possession crimes requires such conduct as an element of the offense" (*People v Eldridge,* 103 AD2d 470, 474 [1984]). There is nothing in the record to indicate that Vazquez initially observed either a drug transaction, namely the exchange of money or drugs, drug possession, namely any residue or any substance in the pipe, the passing of the pipe to or from the defendant, the pipe being smoked by or being placed to the mouth of the defendant, or the defendant's engagement in any furtive activity. Vazquez simply characterized the object as a crack pipe, without providing a description of what he observed prior to the search. Vazquez at one point cites the object as a vial and at other times a pipe. He purportedly observed, at night, from across the street, and while in a moving patrol car, a portion of a three-to-four-inch pipe protruding from the defendant's hand (*see People v Garafolo,* 44 AD2d 86 [1974]; *People v Rutledge,* 21 AD3d 1125 [2005]; *People v Heath,* 214 AD2d 519 [1995]). The issue of credibility is preserved here because the hearing court "expressly decided" that Vazquez was credible (*see People v Edwards,* 95 NY2d 486, 491 n 2 [2000]). The record is silent as to whether the place of the search was a drug-prone location, or whether Vazquez had experience or expertise in identifying illicit substances, drug transactions, or "crack pipes." Additionally, Vazquez could not determine whether there was any substance in the pipe, much less whether the pipe contained contraband. Only on cross-examination did Vazquez testify that, seven months prior to the incident underlying the instant case, he had arrested the defendant for possession of cocaine residue. Nonetheless, Vazquez testified that, at the time of the subject arrest, he did not recognize the defendant, that he did not remember arresting the defendant previously, and that he did not remember the location of that first arrest. On cross-examination, Vazquez was asked: "And you already knew who he was from the previous arrest?" to which he responded: "No, I did not know at the time." Thus, the fact of the prior arrest and the facts underlying it were not included in Vazquez's calculus in finding the existence of probable cause. Since the legality of an arrest must be determined upon the actual facts and circumstances known to the officer at the time of the arrest (*see People v Cooper,* 38 AD3d 678 [2007]), the majority cannot then rely on Vazquez's testimony in this regard to support a finding of probable cause.

Nor does this testimony demonstrate that Vazquez possessed

the knowledge that the pipe in question is commonly used for smoking crack cocaine and, therefore, that there was probable cause to believe that there was cocaine residue in the pipe. The record does not indicate that Vazquez had earlier arrested the defendant with a crack pipe. Again, on cross-examination, Vazquez testified that he arrested the defendant for the exact same thing, namely for the possession of cocaine residue. Residue is defined as "something remaining after a part is taken, separated, removed or designated; remainder; rest" (Webster's Third New International Dictionary [2002]). There is no mention in Vazquez's testimony that a pipe was involved. The document used to refresh Vazquez's recollection was not received into evidence. Should one prior arrest seven months earlier, that was not remembered at the time of the subject incident, together with Vazquez's conclusion that he knows what a crack pipe is, be sufficient to confer knowledge upon the officer that the subject pipe is commonly used to smoke crack or cocaine, warranting a full-blown search, when a person places such a pipe in one's pocket? I respectfully answer this question in the negative.

The People have the initial burden of going forward with evidence of the legality of police conduct (see People v Berrios, 28 NY2d 361, 367 [1971]). The People did not meet their burden in this regard. The majority concludes not only that the People met their burden in this regard by the testimony elicited from Vazquez by the defense on cross-examination, but that the defendant has not met his burden of proving the illegality of the police conduct (see People v Di Stefano, 38 NY2d 640 [1976]). I respectfully disagree. This Court is asked to make too many inferences to sustain the police conduct. We are asked to infer that the first arrest also involved a crack pipe, even though the testimony only indicates that the defendant was arrested for the possession of cocaine residue seven months earlier. Cocaine residue often has been found in and on objects other than pipes, e.g., dollar bills (see People v Martinez, 83 NY2d 26 [1993]), front driver's side and rear passenger seat areas of cars (see People v Jones, 39 AD3d 1169 [2007]), plastic bags (see People v Myers, 303 AD2d 139 [2003]), a dish (see People v Hawkins, 300 AD2d 1101 [2002]), a razor (see People v James, 266 AD2d 236 [1999]), and a plastic straw (see People v Espinal, 209 AD2d 538 [1994]). The majority's conclusion that the prior arrest of this defendant involved a similar pipe is not supported by the record. We are then asked to assume that, if a pipe were involved, then Vazquez possessed the necessary experience from this one arrest, even though not remembered at the time, to know that the subject pipe is the kind commonly used to smoke crack

cocaine. In my opinion, the record does not support making such inferences. "The line between permissible inference and impermissible speculation is not always easy to discern" (*Goldhirsh Group, Inc. v Alpert,* 107 F3d 105, 108 [1997]). Based on the evidence presented at the suppression hearing, the majority's finding that Vazquez had probable cause to search the defendant is unsupported by the record. The testimony that Vazquez recognized the object to be, as the majority characterized it, "[t]he type of pipe commonly used for smoking crack cocaine," is no different from an officer finding probable cause to arrest and search a person upon the mere observation of a glassine envelope or a metal pipe (*see People v Oden,* 36 NY2d at 385; *People v Corrado,* 22 NY2d at 313; *People v Richie,* 77 AD2d at 668).

Since the search was not based on probable cause, the hearing court improperly denied those branches of the defendant's omnibus motion which were to suppress the physical evidence and identification testimony. The evidence seized and the identification of the defendant were the fruit of the illegal search and should be suppressed (*see Wong Sun v United States,* 371 US 471, 488 [1963]), and the matter should be remitted for an independent source hearing (*see People v Wilson,* 5 NY3d 778 [2005]).