Rudolph, EJ.
(dissenting and voting to reverse the judgment of conviction and dismiss the accusatory instrument in the following memorandum). I agree with defendant that the District Court abused, or, at the very least, improvidently exercised, its discretion in admitting the videotape (see People v Patterson, 93 NY2d 80, 84 [1999]). The People relied to a large extent on *86 chain-of-custody testimony to lay the foundation for admission of the tape (see People v Ely, 68 NY2d 520, 527-528 [1986]; People v Orlando, 61 AD3d 1001 [2009]). According to the prosecution testimony, one of the victim’s daughters made the videotape and then turned it over, apparently without viewing it, to the victim’s second daughter. The prosecution testimony further established that the second daughter did not view the tape until two to three days later. After viewing it, she turned it over to the police. The second daughter testified that the tape did not appear damaged at that point. Neither the second daughter nor any other witness testified as to where the videotape was kept during the two-to-three-day period between the second daughter’s receipt of the tape and her viewing of it, or who had access to it during this period, or whether it remained in the second daughter’s custody the entire time. Because of this gap in the chain of custody, the evidence did not establish that the videotape was not altered (see People v Connelly, 35 NY2d 171, 175 [1974] [“the fact that the item was or might have been accessible to other persons not called as witnesses casts suspicion on the integrity of the evidence”]; see also Ely, 68 NY2d at 528 [gap in chain of custody of audiotapes left open possibility of alteration]; DiNardo v Koronowski, 252 AD2d 69, 70 [1998] [“(t)he Court (of Appeals) recognized (in DiMichel v South Buffalo Ry. Co., 80 NY2d 184, 190 [1992]) that surveillance tapes could be easily altered”]). Hence, in my view, the tape should not have been admitted into evidence (see Ely, 68 NY2d at 522 [“(t)he predicate for admission of (audio)tape recordings in evidence is clear and convincing proof that the tapes are genuine and that they have not been altered”]).
There are, to be sure, cases in which gaps in the chain of custody have been held to go only to the weight of the evidence, and not to admissibility (see e.g. People v Hawkins, 11 NY3d 484, 494 [2008]; People v Ketteles, 62 AD3d 902, 904 [2009]; People v Alomar, 55 AD3d 617, 617-618 [2008]). The Court of Appeals gave the following qualification in Hawkins, however: “Gaps in the chain of custody may be excused when circumstances provide reasonable assurances of the identity and unchanged condition of the evidence” (Hawkins, 11 NY3d at 494 [citation omitted; emphasis added]; see Ely, 68 NY2d at 528 [“(w)ere there other foundation proof to overcome (the possibility that audiotapes had been altered), the gap in the chain of custody would affect the weight but not the admissibility of the tapes” (citation omitted)]).
Here, were there such “reasonable assurances” of non-alteration during the two-to-three-day period in question, I *87 would agree with the majority that the gap in the chain of custody went only to the weight of the evidence. For example, if the prosecution had provided (credible) expert testimony to the effect that the videotape had not been altered or that any alteration would have caused visible damage, I would find that the gap went only to the weight of the evidence (see Hawkins, 11 NY3d at 488-489, 494; Ely, 68 NY2d 527). If a witness had (credibly) testified that she had viewed the tape before the gap, and that what it depicted at that time was the same as what it depicted after the gap, I would find that the gap went only to the weight of the evidence (see generally Alomar, 55 AD3d at 618). Had the sister who received the tape and then turned it over to the police (credibly) testified that she had safeguarded the tape in a manner that provided reasonable, albeit not perfect, assurances that third parties did not have access to it, I would find that the deficiency went only to the weight of the evidence (see Ketteles, 62 AD3d at 904). Had the testimony established that the gap in time was minimal, that circumstances had minimized the possibility that tampering had taken place, and that there was an indication of non-tampering, I would find that the gap went only to the weight of the evidence (see Hawkins, 11 NY3d at 488-489, 494). The lack of evidence as to the specific whereabouts of the tape during the period in question here was, however, fatal to admissibility (see Ely, 68 NY2d at 528-529).
Since it was not shown that the videotape was reliable enough to warrant its admission into evidence, and since the verdict rested on the videotape, dismissal is warranted on the ground that the verdict was against the weight of the evidence (see People v Danielson, 9 NY3d 342 [2007]; People v Mateo, 2 NY3d 383 [2004]; cf. People v Schweininger, 25 AD2d 769 [1966], affd 19 NY2d 872 [1967]). In view of the foregoing, I would reach no other issues.
Tanenbaum and Nicolai, JJ., concur; Rudolph, RJ., dissents in a separate memorandum.