ESPINOZA, Plaintiff,

v.

**CITY OF NEW YORK, et al., Defendants.**

**13 Civ. 1374 (ILG) (MDG)**

United States District Court, E.D. New York.

Signed July 6, 2016

Brett H. Klein, Lissa Strata Green-Stark, Brett H. Klein, Esq. PLLC, New York, NY, Jason Leventhal, Leventhal Law Group, P.C., Brooklyn, NY, for Plaintiff.

Joshua J. Lax, Andrew Galway Owen, NYC Law Department, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

GLASSER, Senior United States District Judge:

### BACKGROUND

This case is a stunning example of law and litigation run amok. It is, at its core, a case of a bartender who, at the request of a drunk patron (the Plaintiff), summoned a livery cab to take him home. Once in the car, Plaintiff informed the driver that he had no cash on his person, but had cash at home and would pay him when they arrived there. Hearing that, the driver asked him to leave the car, but, mistakenly believing that having been accepted as a passenger the driver was obligated to drive him home, Plaintiff refused to leave. The driver then proceeded a short distance to the local police precinct where he sought assistance to remove the passenger. Little did the inebriated Plaintiff foresee that his desire to return home would leave him shackled, jailed, and hospitalized with assorted physical injuries.

What happened at the police precinct is disputed, though three things are not. First, it is undisputed that Plaintiff ultimately paid the livery driver his fare. (See Defs.' Statement Pursuant to Local Civil Rule 56.1 ¶ 35, ECF No. 43; Riker Dep. at 82:6–9; 87:22–25, ECF No. 49–3; Perrone Dep. at 75:5–76:7; 79:8–15, ECF No. 49-2.)

Second, it is undisputed that Plaintiff suffered serious injuries. Those injuries required emergency assistance from an ambulance which took Plaintiff to the Queens Hospital Center where he was treated for injuries to his face and head. Plaintiff later underwent surgery and physical therapy for injuries to his shoulders and knees. (Am. Compl. ¶¶ 24, 28–33, ECF No. 16; Defs.' Statement Pursuant to Local Civil Rule 56.1 ¶ 39, ECF No. 43.)

Finally, it is undisputed that Plaintiff was never under arrest—even though he was restrained and taken into police custody. (See Defs.' Statement Pursuant to Local Civil Rule 56.1 ¶ 38, ECF No. 43.) Plaintiff, likely sensing that he had committed no offense, repeatedly asked why he was being arrested. In response, New York Police Department Officer Gerardo Perrone testified that he "told him he[ was] not under arrest. ... At this point in time he didn't commit any crimes. He was just being a danger to himself and everyone else around him." (Perrone Dep. at 217:7–12, ECF No. 49-2.)

And yet, how, exactly, Plaintiff was endangering himself and others is not clear, which is partially the result of the inconsistent and incredible deposition testimony of the police officer defendants. Similarly unclear is how, exactly, Plaintiff's injuries came about. Defendants assert that Plaintiff "refused verbally" to exit the cab, and "remained seated, a physical act." (Defs.' Mem. of Law in Support of Sum. J. at 10, ECF No. 45.) Plaintiff, on the other hand, maintains that the officers removed him from the cab, and he did not resist. (Espinoza Dep. at 127:20–25, ECF No. 49-1.)

Defendants allege that, once out of the cab, Plaintiff struggled to stand up on his own. (Perrone Dep. at 76:8–15, ECF No. 49-2.) He was "heavily intoxicated." (Id. at 78:2.) Yet Defendants also describe that they sent Plaintiff to walk home alone, believing that he was not too drunk to do so. (Id. at 88:6–24.) According to the Defendants, instead of walking home, Plaintiff began behaving "irrational[ly]," like "an emotionally disturbed person" who was "getting angry and falling down." (Riker Dep. at 110:10–25, ECF No. 49-3. See also Perrone Dep. at 117:17–21, ECF No. 49-2.) It was at that point, Perrone testified, that "I realize[d] I ha[d] to handcuff him." (Perrone Dep. at 117:19, ECF No. 49-2.) For his part, Plaintiff testified that once outside the cab he began arguing with the officers, and that he was handcuffed as a result of this verbal exchange. (Espinoza Dep. at 130:9–16, ECF No. 49-1.)

Defendants assert that Plaintiff's injuries were self-induced, a result of his allegedly irrational behavior. Plaintiff claims that while handcuffed, he was thrown against the precinct steps and assaulted repeatedly by the Defendants, causing his injuries. (See Defs.' Statement Pursuant to Local Civil Rule 56.1 ¶ 45, ECF No. 43.)

The event spawned a complaint naming the City of New York, police officers Perrone, Sean Riker, Jason Loesch, and ten unnamed others as Defendants charged with the following wrongs:

1. Deprivation of rights, 42 U.S.C. § 1983;

2. False arrest/unlawful imprisonment, 42 U.S.C. § 1983;

3. Excessive force, 42 U.S.C. § 1983;

4. Failure to intervene, 42 U.S.C. § 1983;

5. Deprivation of substantive due process, 42 U.S.C. § 1983;

6. Violation of the equal protection clause, 42 U.S.C. § 1983;

7. Supervisory liability;

8. Municipal liability;

9. False arrest under the laws of the State of New York;

10. Assault under the laws of the state of New York;

11. Battery under the laws of the State of New York;

12. Intentional infliction of emotional disturbance;

13. Negligent screening, hiring and retention;

14. Negligent training and supervision;

15. Negligence;

16. Respondeat superior liability;

17. Violation of the New York State Constitution, Article I § 11;

18. Violation of the New York State Constitution Article I § 12.

It is that complaint which elicited the opening sentence of this opinion. Now, after almost three years since the filing of the complaint and 98 numbered and unnumbered docket entries, Defendants have filed a motion for partial summary judgment as to the claims of false arrest, 42 U.S.C. § 1983 and New York State Constitution Article I § 12, failure to intervene,

42 U.S.C. § 1983, state law claims against the individual Defendants, and qualified immunity. Besides the excessive force claim, on which Defendants have not moved, the rest of Plaintiff's claims have been withdrawn.[1]

## DISCUSSION

### 1. False Arrest/False Imprisonment, 42 U.S.C. § 1983

■ The reference to an "arrest" is misplaced. There was no arrest. The common law tort at issue has been historically characterized as false imprisonment. Probable cause is a complete defense to it, Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir.2013), and Defendants attempt to support their view that they had probable cause to detain the Plaintiff. They devote more than ten pages, two statutes, and a plethora of case citations to trumpet attempted theft of services, N.Y. Penal Law § 165.15(3), and obstruction of governmental administration, N.Y. Penal Law § 195.05, as defining probable cause.

These assertions can only be regarded as fanciful. New York Penal Law § 165.15(3) requires that Plaintiff obtained the livery driver's services "without payment" or "[w]ith intent ... to avoid payment." Plaintiff testified he told the driver he would pay the fare when he got home and was initially mistaken in believing that he had no money. Moreover, it is undisputed that Plaintiff ultimately paid for the livery service.

■ Equally egregious is the assertion that Plaintiff violated N.Y. Penal Law § 195.05, providing probable cause for restraining him. Plaintiff disputes that he ever resisted Defendants, but even if he

did, this Court fails to see how resisting being forcibly dragged from a livery car without explanation "intentionally obstructs, impairs or perverts th[e] administration of law." N.Y. Penal Law § 195.05.

The genesis of the unfortunate event at the heart of this action is stated in pristine simplicity by Sean Riker, the first police officer on the scene, at p. 31 of his deposition:

Q. So the taxi driver came in and went directly to you?

A. Yes.

Q. And what happened when he approached you?

A. He mentioned that he had somebody in his vehicle he needed to get removed.

Q. Did he give you any other details other than he just needed someone removed?

A. He mentioned that it was somebody he had picked up as a fare.

Q. Anything else?

A. No.

Q. Did he tell you why he needed to remove them?

A. No.

(Riker Dep. at 31:10–25, ECF No. 49-3.)

Accordingly, Defendants' motion for summary judgment with respect to the claim of false arrest/imprisonment under 42 U.S.C. § 1983 is denied.

### 2. False Arrest, New York State Constitution Article I, § 12

■ With respect to Plaintiff's claim as for false arrest premised on the New York State Constitution Article I, § 12,

---

1. Specifically, Plaintiff withdrew the following claims: deprivation of substantive due process, 42 U.S.C. § 1983; violation of the equal protection clause, 42 U.S.C. § 1983 and New York State Constitution Article I § 11; negligent screening, hiring and retention; negligent training and supervision; intentional infliction of emotional disturbance; supervisory liability; and municipal liability.

Defendants correctly assert that the New York State Constitution "is unavailable where an alternative remedy will adequately protect the interests at stake." Campbell v. City of New York, No. 09 Civ. 3306 (FB), 2011 WL 6329456, at *5 (E.D.N.Y. Dec. 15, 2011) (quotation omitted). Because the Plaintiff has an alternative remedy, i.e., a false arrest claim pursuant to § 1983 against the individual Defendants, Article I, § 12 is not applicable and summary judgment is granted as to that claim.

■ However, the alternative remedy of false arrest against the City, premised upon respondeat superior liability, is not viable pursuant to § 1983. See, e.g. Vilkhu v. City of New York, No. 06 Civ. 2095 (CPS), 2008 WL 1991099, at *9 (E.D.N.Y. May 5, 2008). The New York State Constitution claim as against the City survives the Defendant's motion for summary judgment, which is thus denied.

### 3. Failure to Intervene, 42 U.S.C. § 1983

■ Plaintiff's failure to intervene claim is premised on the notion that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir.1994). For liability to attach under this theory, the officer must know or have reason to know about the constitutional violation, and "there must have been a realistic opportunity to intervene to prevent the harm from occurring." Id.

Defendants argue that if there was an assault, it was so brief that it afforded no realistic opportunity for them to intervene. (Mem. of Law in Supp. of Defs.' Mot. for Summary J. 12, ECF No. 45.) But this argument is meritless, considering that Plaintiff's injury was prolonged and signifi-

cant enough to warrant the calling of an ambulance.

■ Alternatively, Defendants assert that "[f]or the false arrest and excessive force claims alleged against all defendants, none of them can be liable for a failure to intervene if they are directly liable for the constitutional violation." (Id. at 11.) But because facts surrounding the alleged assault—including which officers used force and which were duty-bound to intervene—are in dispute, summary judgment on this claim is denied.

### 4. State Law Claims against the Individual Defendants

■ Plaintiff has asserted state law claims for false arrest, assault, battery, and negligence against individual Defendants Perrone, Riker, and Loesch. Defendants argue that summary judgment is appropriate on these claims because Plaintiff did not identify the individual Defendants in his notice of claim required by New York General Municipal Law § 50–e. In their view, that omission is an absolute bar to suit because it violated that statute, which requires any notice of claim to include "(1) the name ... of each claimant ...; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained ... [.]" N.Y. Gen. Mun. Law § 50–e(2). Plaintiff did submit a timely notice of claim (Ex. F. to Dec. of Joshua J. Lax, ECF No. 44-6), including a description of the alleged incident. He concedes, however, that he failed to identify the individual defendants by name. (See Mem. of Law in Opp. to Defs.' Mot. for Summary J. 11–12, ECF No. 48.)

■ Although the mandates of § 50–e are to be "construed strictly," Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir.1999), the

purpose of that rule is to put municipal defendants on notice of claims against them by providing "information sufficient to enable the city to investigate" the alleged incident. Parise v. New York Dep't of Sanitation, 306 Fed.Appx. 695, 697 (2d Cir.2009) (quotation omitted). Accordingly, Courts in this Circuit are divided over whether a claim must explicitly name the individual defendants, if it otherwise achieves that goal. Compare Raus v. Town of Southampton, N.Y., No. 13 Civ. 7056, 2015 WL 2378974, at *4 (E.D.N.Y. May 18, 2015) ("Recent courts have held that New York General Municipal law § 50-e does not require that the individuals be specifically named in the notice of claim as a condition precedent to bringing the claims.") (collecting cases) with Stevens v. City of New York, No. 10 Civ. 2172 (KBF), 2012 WL 5862659, at *3 (S.D.N.Y. Nov. 14, 2012) ("[F]ailure to comply with the mandatory New York statutory notice-of-claim requirements generally results in dismissal of [a plaintiff's] claims.") (quotation omitted).

Here, where Plaintiff's notice of claim described the incident in detail, this Court declines to elevate form over substance by an unduly strict application of § 50-e. Therefore, Defendants' motion with respect to Plaintiff's state law claims against the individual Defendants is denied.

### 5. Qualified Immunity

Defendants assert that Perrone, Riker, and Loesch are entitled to qualified immunity. Whether a reasonable officer in their positions would have known that his conduct violated the Plaintiff's "clearly established statutory or constitutional rights" (Cerrone v. Brown, 246 F.3d 194, 199 (2d Cir.2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)) is a question that depends on the resolution of material facts in dispute. Accordingly, Defendants are not entitled to qualified immunity as a matter of law. See Simpson v. City of New York, 793 F.3d 259, 268–69 (2d Cir.2015).

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied in part and granted in part. Summary judgment is granted on Plaintiff's claims against the individual Defendants brought under the New York State Constitution Article I, § 12. Summary judgment is denied as to all other claims.

SO ORDERED.