18-2963-pr
Sanchez v. Bonacchi

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of October, two thousand nineteen.

PRESENT: GERARD E. LYNCH,
RAYMOND J. LOHIER, JR.,
RICHARD J. SULLIVAN,
*Circuit Judges*.

------------------------------------------------------------------

GERMAN SANCHEZ,

*Plaintiff-Appellee*,

v.                                                                 No. 18-2963-pr

ALDO BONACCHI,

*Defendant-Appellant*.*

------------------------------------------------------------------

_____

\* The Clerk of Court is directed to amend the official caption as shown above.

FOR APPELLANT:                    Brendan Sheehan, Bond,
                                  Schoeneck & King PLLC,
                                  Syracuse, NY.

FOR APPELLEE:                     MOLLY C. CASEY, Maguire
                                  Cardona, P.C., Albany, NY.

Appeal from a judgment of the United States District Court for the

Northern District of New York (Thomas J. McAvoy, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED,

AND DECREED that the judgment of the District Court is REVERSED, and the

case is REMANDED to the District Court with instructions to enter judgment for

Aldo Bonacchi, the defendant.

Bonacchi, a sergeant with the Oswego Police Department, appeals from a

jury verdict in favor of plaintiff German Sanchez and from the denial of

Bonacchi's post-trial motion for judgment as a matter of law under Rule 50(b) of

the Federal Rules of Civil Procedure.   Sanchez sued Bonacchi under 42 U.S.C.

§ 1983 for civil rights violations based on a manual body cavity search that

Bonacchi conducted incident to his arrest of Sanchez on felony drug charges in

February 2013.   The jury awarded nominal damages ($1.00) to Sanchez.   After

the verdict, the District Court denied Bonacchi's Rule 50(b) motion seeking

2

judgment on qualified immunity grounds. We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision to reverse and remand.

We review a district court's denial of a Rule 50(b) motion de novo. Stevens v. Rite Aid Corp., 851 F.3d 224, 228 (2d Cir. 2017) (quotation marks omitted). "Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in h[is] favor." Id. (quotation marks omitted).

On appeal, Bonacchi argues that the District Court erred in denying qualified immunity as a matter of law because it failed to determine whether the right at issue was clearly established in February 2013 and incorrectly relied on testimonial evidence of Bonacchi's subjective beliefs about controlling law instead. In this case, the relevant right at issue is the right to be free from a warrantless manual body cavity search in the absence of exigent circumstances and a particularized suspicion that evidence of a crime is secreted inside the body cavity. See Schmerber v. California, 384 U.S. 757, 769–72 (1966). In

response, Sanchez insists that Bonacchi forfeited his qualified immunity defense by failing to move for judgment on that basis prior to trial, and he argues that the right at issue was clearly established at the time of the search.

1.  Forfeiture

We easily dispense with Sanchez's argument that Bonacchi forfeited his qualified immunity defense.   Qualified immunity may be forfeited "either by failure to raise it in a timely fashion or by failure to raise it with sufficient particularity."   McCardle v. Haddad, 131 F.3d 43, 51 (2d Cir. 1997).   But Bonacchi did not fail on either ground.   He asserted the defense in his answer, in his pre-trial brief, in proposed jury instructions, in a motion under Rule 50(a) during trial, and in his Rule 50(b) motion after the verdict.   These assertions were timely and advanced a consistent theory of qualified immunity, namely, that there was no clearly established law on the circumstances of the case. Accordingly, Bonacchi adequately preserved his qualified immunity defense by asserting and developing it throughout the proceedings below.   Contrary to Sanchez's argument, a defendant is not required to move for summary judgment

4

in order to preserve the qualified immunity defense. See Stephenson v. Doe, 332 F.3d 68, 75–76 (2d Cir. 2003).

2. Qualified Immunity

Qualified immunity shields government officials from liability unless "the official violated a statutory or constitutional right" that "was clearly established at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (quotation marks omitted). A right is clearly established if "[t]he contours of [the] right [are] sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." Id. at 741 (quotation marks omitted). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." Moore v. Vega, 371 F.3d 110, 114 (2d Cir. 2004). Even if a right is clearly established, qualified immunity may nonetheless apply if "it was objectively reasonable for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (quotation marks omitted). Here, the District Court applied an incorrect legal test in concluding that Bonacchi was not entitled to qualified immunity.

5

Because we conclude that the right was not clearly established at the time Bonacchi conducted the manual body cavity searches in this case, Bonacchi was entitled to qualified immunity, and we reverse the District Court's judgment.

### A. District Court Decision

In denying qualified immunity, the District Court relied on the proposition that qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." App'x 247 (quoting White v. Pauly, 137 S. Ct. 548, 551 (2017)). It held that, "[b]ecause Defendant personally conducted a manual body cavity search of Plaintiff before obtaining a judicial warrant, and because Defendant essentially testified that he knew such conduct violated Plaintiff's rights, Defendant is not entitled to qualified immunity." Id. By relying on Bonacchi's subjective intent or belief as to the state of the law to determine whether he was entitled to qualified immunity, the District Court erred. The qualified immunity inquiry involves "an objective, not a subjective, test," one that "is determined by reference to the case law extant at the time of the violation." In re County of Erie, 546 F.3d 222, 229 (2d Cir. 2008); see also Al-Kidd, 563 U.S. at 736–37 (stating that whether a search violates the Fourth

Amendment is a question of "conduct rather than thoughts," and that Fourth Amendment jurisprudence "almost uniformly reject[s] invitations to probe subjective intent").

To the extent the District Court considered the relevant clearly established law to be the general right under the Fourth Amendment to be free from unreasonable searches and seizures, this was also error. It is a "longstanding principle that clearly established law should not be defined at a high level of generality." White, 137 S. Ct. at 552 (quotation marks omitted). In the Fourth Amendment context, "[t]he general proposition . . . that an unreasonable search or seizure violates the [Constitution] is of little help in determining whether the violative nature of the particular conduct is clearly established." Al-Kidd, 563 U.S. at 742.

For these reasons, the District Court's qualified immunity analysis was incorrect.

### B. Whether the Right was Clearly Established

We proceed to determine whether a right to be free from a warrantless manual body cavity search in the absence of exigent circumstances and a

particularized suspicion that evidence of a crime is secreted inside the body cavity was clearly established at the time of the search, in February 2013. In deciding whether this right was clearly established, we consider only precedential decisions of the Supreme Court and this Court. Golodner v. Berliner, 770 F.3d 196, 206 (2d Cir. 2014). "We do not require a case directly on point, but existing precedent must have placed . . . the constitutional question beyond debate." Al-Kidd, 563 U.S. at 741.

Bonacchi relies primarily on our 2013 decision in Gonzalez v. City of Schenectady, issued just a few months after the arrest in this case, to support his argument that the law governing manual cavity searches in arrests involving felony drug charges was not clearly established. In Gonzalez, officers of the Schenectady Police Department arrested the plaintiff after he was observed verbally offering to sell drugs to an undercover officer and, at the police station, subjected him to a strip search, a visual body cavity search, and a manual body cavity search. Gonzalez, 728 F.3d at 153. In considering Gonzalez's Fourth Amendment claim, we observed that "[t]he law governing these types of searches is far from settled," and that "the rules alter with circumstances . . .

8

[that] are myriad." Id. at 158. We determined that, "[a]lthough we have repeatedly held that the police may not conduct a suspicionless strip or body cavity search of a person arrested for a misdemeanor," neither this Court nor the Supreme Court had squarely extended that rule to felony drug arrests, and, accordingly, "reasonable officers could disagree as to whether that rule applied to" felony drug arrests. Id. at 161. Thus, Gonzalez's review of the relevant case law confirms that the right asserted by Sanchez was still not clearly established eight months after the events at issue in this case.

While we do not read Gonzalez to dispense with the legal distinction between manual body cavity searches, which breach the outer surface of the body, and visual body cavity searches, which do not, the doctrine of qualified immunity does not require officers to "distinguish holding from dicta, or to put together precedents for line-drawing, or to discern trends or follow doctrinal trajectories" in order to avoid § 1983 liability. Id. at 162. We therefore conclude, in light of Gonzalez, that reasonable officers in February 2013 could have disagreed about the rights of felony drug arrestees with respect to manual body cavity searches. Accordingly, the right at issue was not clearly established

9

at the time Sanchez was subjected to a cavity search in connection with a felony drug arrest, and Bonacchi was entitled to qualified immunity.

Because we resolve this case on the ground that the right was not clearly established at the time of Sanchez's arrest, we need not decide whether the conduct constituted a constitutional violation under the first prong of the qualified immunity test.   See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

We have considered Sanchez's remaining arguments and conclude that they are without merit.   For the foregoing reasons, the judgment of the District Court is REVERSED, and the case is REMANDED to the District Court with instructions to enter judgment for the defendant.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
